# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

NO. 03-24-00134-CR

---

**Christopher Broadus, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE 424TH DISTRICT COURT OF BURNET COUNTY**
**NO. 52331, THE HONORABLE EVAN C. STUBBS, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellant Christopher Broadus challenges his conviction for aggravated sexual assault of a child. *See* Tex. Penal Code § 22.021(a)(2)(B). In three issues, Appellant contends that the trial court erred when it admitted extraneous offense evidence through the testimony of complainant's sister,[1] included result of conduct language in the court's charge, and allegedly added check marks next to each element in the jury charge. We affirm the trial court's judgment of conviction.

---

[1] Because the complainant was a minor at the time of the offense, we will refer to her as "Child" and her family members based on their relationship to her. *See* Tex. R. App. P. 9.10(a)(3).

# BACKGROUND[2]

Father testified that he, his wife (Mother), and their children (including Child and Sister) were friends with Appellant, Appellant's wife, and their children. In 2011, Mother moved out of the family home to live with her girlfriend. Appellant, who had separated from his wife, moved in with Father and the kids. Father explained that just before Appellant moved in with them, Child—who was six or seven at the time—was diagnosed and hospitalized with a heart condition. Appellant helped the family by sitting with Child at the hospital at night when Mother was working. Father was dealing with health issues at that time due to a recent amputation of one of his legs due to an infection. Father testified that Sister is two years older than Child.

Father testified that he and Mother knew that Appellant was a convicted sex offender from the beginning of the friendship and prior to allowing him to move in with Father. He testified that Appellant told him that his conviction was the result of a relationship he had with a fourteen-year-old who was a stripper at a club that Appellant was a DJ at and that she had a fake ID. Father testified that based on that story he did not believe that Appellant was a threat to his children. However, Father also testified that it probably would not have changed how he viewed Appellant even if he had been told that Appellant met the fourteen-year-old at a skating rink, and not a strip club, while working there as a DJ.

About a year later, Father moved out of town with his girlfriend, and Mother moved to a different city with her girlfriend, the kids, and Appellant. Approximately eleven months later, the kids moved in with Father and would occasionally visit Mother. Father stayed

---

[2] Because it is relevant to Appellant's first issue, we note that this section describes the testimony presented at trial out of order for clarity. As is relevant to Appellant's first issue, the State's second to last witness was Sister and its last witness was its expert witness.

friends and in contact with Appellant. In 2019 or 2020, Appellant told Father over the phone that Child had a friend who was a bad influence on her. When Father confronted Child about the friend, she started crying and told Father that he should not trust Appellant because of the things of a sexual nature that Appellant had done to her. Father reported what Child told him to the authorities and worked with them to schedule a forensic interview for Child. Father testified that he cut off contact with Appellant.

Cameron Hines, the forensic interviewer who spoke with Child, testified as the outcry witness. She testified that Child—who was 16 years old at the time of the forensic interview—told her that Appellant "had touched her vagina and put his fingers inside of her vagina." Child told Hines that it "hurt" and that it happened one time when she was seven years old.

Sergeant Kristin Davis testified that she was assigned to investigate the allegations of sexual assault against Child. She did not speak to Child directly. She spoke with Father and scheduled the forensic interview for Child. She also interviewed Sister and realized there was a need to open a separate investigation regarding a sexual assault against Sister. She testified that the "subject" of both investigations was Appellant. She testified that she interviewed Appellant and he denied that he had assaulted Child. She also interviewed Mother and Appellant's girlfriend.

Mother, who was serving a prison sentence for drug charges at the time of trial, testified that Appellant was "a really good friend of" hers. She described the mobile home that she, her kids, and Appellant had lived in together. It had three bedrooms, and her two daughters shared a room, she shared a room with her girlfriend, and her son and Appellant shared a room. Mother also testified that there was a "reward system" in place, in which her daughters competed

3

against each other and the one with the best behavior during the week was rewarded by being able to sleep in Appellant's room with him for the weekend. She testified that around the same time that the children moved to live with Father, Appellant moved out of her home and moved in with a girlfriend. She testified that when the children visited her while living with Father, they would also visit and stay overnight with Appellant. At some point Child stopped wanting to go stay with Appellant. Mother testified that she found out about the allegations against Appellant regarding sexual abuse of her children from Father.

Child, who was nineteen at the time of trial, testified that Appellant was a friend of her parents when she was young. She testified that when she was hospitalized at age seven, her mother and Appellant would take turns staying with her. After her parents separated she moved with her mother, her siblings, Mother's girlfriend, and Appellant into a three-bedroom trailer home. She testified—contrary to Mother's testimony—that her younger brother stayed with Mother and Mother's girlfriend in the master bedroom. She testified that Appellant had his own room that she or her sister slept in sometimes and otherwise her and her sister shared the third bedroom. She explained that she and Sister would be assigned chores and whichever one of them finished faster would "have a reward night with [Appellant]," which included going out to the movies, getting a toy, or spending the night in Appellant's room to watch a movie and eat popcorn and then "cuddle" while sleeping. One night when she was seven or eight years old, she was having a "reward night" in Appellant's room and fell asleep while watching a movie. She woke up to Appellant "spooning" her from behind her and rubbing the outside of her vagina with his hand, first over her shorts then under her underwear. He then inserted a finger inside her vagina. The assault lasted "a couple minutes," and Child pretended to be asleep during it. After Appellant stopped, Child waited for him to fall asleep and went to sleep in her mom's bed.

4

After this incident, Child stopped wanting to stay with Appellant for the reward nights and allowed her grades to drop and finished her chores more slowly than her sister did. She did not tell anyone what happened right away because she did not want to "ruin" her parents' friendship with Appellant and she did not think anyone would believe her. She and her siblings moved in with Father. She continued to avoid being alone with Appellant, but she would occasionally see him in person or text him, especially to communicate information about Mother. She never visited Appellant's trailer that he moved into after moving out of her mom's trailer, but her sister did.

Child admitted that when she was interviewed at a child advocacy center regarding allegations of physical abuse by Father's girlfriend, she said she had never been sexually assaulted. She explained that she said that because it was a secret that she wanted to keep and did not want anyone to know. She testified that she experienced "an emotional break" when Father accused her of "hanging out with the wrong people" and was believing Appellant over her, which resulted in her telling Father that Appellant had "touched [her] down there."

Sister, who was twenty-two at the time of the trial, was called to testify about alleged extraneous offenses committed by Appellant against her. She testified that after she, Child, and their brother moved in with Father—before Child's outcry—Sister would visit Appellant at his trailer when she was in town visiting Mother. On one occasion, when she was sixteen years old, she was drinking beer and watching a movie with Appellant's son when Appellant asked her to come to his room to help him with a zipper. He then asked her to perform oral sex on him, and she complied. She went back to watching the movie and slept on a couch in the living room. She went back to her mom's home the next morning. A couple weeks later, she fell asleep in Appellant's room in his trailer and awoke to Appellant putting his penis in her

5

mouth. While testifying about this incident, Sister began crying and the trial court ordered a break. After the break, Sister testified that after the second incident concluded, she went to the living room and went to sleep, and Appellant stayed in his bedroom. She testified that Appellant did not say anything to her after either incident. She testified—contrary to Mother's testimony—that she told her mother about the incidents a few months later, but the abuse was not reported to law enforcement until Child told their father about her own abuse over a year later.

On cross examination, defense counsel played for Sister, outside the presence of the jury, a video of her forensic interview regarding the allegations she had testified to. Defense counsel cross-examined Sister regarding some details that were different between her forensic interview and her trial testimony. One purported difference pointed out was that although she told the interviewer that Appellant "forced her" to perform oral sex, at trial she testified that he asked her to and she complied because she was afraid of being hurt if she did not. Another difference was that though she testified that Appellant "climaxed," she told the interviewer that he had not. Sister admitted that she had testified during a hearing outside the presence of the jury the day before that she also "put [her] finger in his anus" but that she had not said that to the interviewer or testified to it in front of the jury.

On redirect, Sister explained that she had not seen the video of her forensic interview before the trial and that seeing it had refreshed her memory. While crying, she testified that Appellant had "forced" her. While still crying, she asked the trial court to take a break, and another break was taken. After the break, she explained that Appellant "had pulled [her] hair and forced [her] onto his penis" both times. She also testified that she remembered him telling her "[t]hat if [she] said anything that [she] would get in trouble." She also remembered that she had told him to stop and "pulled his hand away" but could not remember

6

his response to that. She testified that it never happened again because she stopped going to his home and she did not have any further communication with him.

Lisa Carson, a licensed professional counselor, testified as an expert witness regarding delayed outcries by child victims of sexual assault. She explained that a delayed outcry is when "the child doesn't tell right away" and that there are many reasons, including the closeness of the abuser to the victim's family, that can cause delayed outcries. She also testified regarding "grooming," which is "a series of actions, things that somebody might say or do to kind of gradually get access to the child because sexual abuse happens in a private place." She testified this is often accomplished through gifting toys to the child or taking them on "special outings."

The State presented testimony and evidence of Appellant's prior conviction for sexual assault of a child. Sergeant Davis, the lead investigator for Child's case, testified that while she was interviewing Appellant, he disclosed to her that he had a prior conviction for sexual assault. She testified that Appellant told her that the prior offense occurred when he was twenty years old and involved a fourteen-year-old that was using a fake ID and that he had met her at a strip club.

Constable Scott Davis testified regarding evidence of Appellant's prior conviction for the sexual assault of a child offense, which he pleaded guilty of in 1992 and was sentenced to ten years' imprisonment. The evidence included the judgment of conviction and photographs and fingerprints of the defendant in that case, all of which were admitted into evidence. Constable Davis testified that he had taken Appellant's fingerprints the day before, compared them to those associated with the prior conviction, and determined that the two sets matched. He also testified that the name on the judgment and Appellant's name matched.

7

Investigator Jeffrey Acklen testified that he was the detective assigned to the case that was the genesis of Appellant's 1992 conviction. He testified that according to the complainant in that case, the victim was fourteen years old at the time she had sex with Appellant, who was twenty years old at the time, and that the victim had met Appellant at a roller-skating rink where Appellant worked at the time.

Appellant presented evidence through the testimony of Tonya Paulk. Paulk testified that she was Appellant's best friend. She testified that she trusted Appellant and that he often watched her children for her. Paulk testified that Sister's testimony that she had cut off communication with Appellant, was not true. Paulk explained that she had seen communication from Sister to Appellant. On cross-examination, Paulk was asked if she knew that Appellant was a sex offender when she first met him. Paulk replied that she did and explained that Appellant had told her that he had gone to a bar when he was twenty years old and met a girl that was seventeen years old.

After hearing all the evidence, the jury found Appellant guilty of aggravated sexual assault of a child. *See* Tex. Penal Code § 22.021(a)(2)(B). At the punishment hearing, Appellant pleaded true to the enhancement paragraph allegation that he had previously been convicted of the offense of sexual assault of a child. *See id.* § 22.011(a)(2). The trial court found the enhancement paragraph to be true and sentenced Appellant to the mandatory sentence of life imprisonment. *See id.* § 12.42 (imposing sentence of life imprisonment when defendant is convicted of aggravated sexual assault and was previously convicted of sexual assault). Appellant filed a motion for new trial, which was overruled by operation of law. Appellant appealed.

## EXTRANEOUS OFFENSE EVIDENCE

In his first issue, Appellant contends that the trial court erred when it admitted the extraneous-offense testimony from Sister. He contends that the testimony should have been excluded under Rule of Evidence 403.

### Standard of Review

At the trial of a defendant accused of, among other things, aggravated sexual assault of a child, evidence that the defendant committed a separate sex offense against another child may be admissible under Article 38.37 "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." *See* Tex. Code Crim. Proc. art. 38.37, § 2; *see also Dies v. State*, 649 S.W.3d 273, 284 (Tex. App.—Dallas 2022, pet. ref'd). "When evidence of a defendant's extraneous acts is relevant under article 38.37, the trial court is still required to conduct a Rule 403 balancing test upon a proper objection or request." *Hitt v. State*, 53 S.W.3d 697, 706 (Tex. App.—Austin 2001, pet. ref'd).

We review a trial court's ruling regarding the admission or exclusion of extraneous offense evidence for an abuse of discretion. *See Irsan v. State*, 708 S.W.3d 584, 616 (Tex. Crim. App. 2025). Under that standard, a trial court's ruling will be deemed an abuse of discretion only if it is so clearly wrong as to lie outside "the zone of reasonable disagreement," *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is "arbitrary or unreasonable," *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). Moreover, the ruling will be upheld provided that the trial court's decision "is reasonably supported by the record and is correct under any theory of law applicable to the case." *Carrasco v. State*, 154 S.W.3d 127, 129

(Tex. Crim. App. 2005). In addition, an appellate court reviews the trial court's ruling in light of the record before the court "at the time the ruling was made." *Khoshayand v. State*, 179 S.W.3d 779, 784 (Tex. App.—Dallas 2005, no pet.).

Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. "Under Rule 403, it is presumed that the probative value of relevant evidence exceeds any danger of unfair prejudice. The rule envisions exclusion of evidence only when there is a clear disparity between the degree of prejudice of the offered evidence and its probative value." *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (footnotes and internal quotation marks omitted). Accordingly, "the plain language of Rule 403 does not allow a trial court to exclude otherwise relevant evidence when that evidence is merely prejudicial. Indeed, all evidence against a defendant is, by its very nature, designed to be prejudicial." *Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013) (internal citation omitted).

"Probative value" means more than relevance; it "refers to the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence." *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006). "Unfair prejudice" refers to a "tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.*; *see Inthalangsy v. State*, 634 S.W.3d 749, 758 (Tex. Crim. App. 2021). In conducting a Rule 403 analysis, the trial court must balance the claimed

probative force of the proffered evidence along with the proponent's need for the evidence against:

> (1) any tendency of the evidence to suggest that the case would be decided on an improper basis; (2) any tendency of the evidence to confuse or distract the jury from the main issues; (3) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence; and (4) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Henley v. State*, 493 S.W.3d 77, 93 (Tex. Crim. App. 2016) (citing *Gigliobianco*, 210 S.W.3d at 641–42). These factors may blend together in practice. *Gigliobianco*, 210 S.W.3d at 642. The court's balancing test need not be performed on the record. *See Hitt,* 53 S.W.3d at 706. Reviewing courts should afford trial courts a high level of deference regarding admissibility determinations under Rule 403. *See Brickley v. State*, 623 S.W.3d 68, 79–80 (Tex. App.—Austin 2021, pet. ref'd).

**Analysis**

Here, the trial court held a hearing outside the presence of the jury to determine the admissibility of Sister's extraneous-offense testimony. Appellant objected on Rule 403 grounds. The trial court overruled that objection.

Appellant concedes that this evidence had probative value. *see Deggs v. State*, 646 S.W.3d 916, 925 (Tex. App.—Waco 2022, pet. ref'd) (explaining that "evidence of a separate sexual offense against a child admitted under Article 38.37, Section 2(b) is probative of a defendant's character or propensity to commit sexual assaults on children."). Here, the State's need for the evidence was to rebut the defensive theory of fabrication—that Child had made up the allegations in anger after learning that Appellant had told her father that she had a friend who

11

was a "bad influence." *See Hammer*, 296 S.W.3d at 568 (explaining that "Rule 403 . . . should be used sparingly, especially in 'he said, she said' sexual-molestation cases that must be resolved solely on the basis of the testimony of the complainant and the defendant"). There were no corroborating eyewitnesses or physical or biological evidence of the abuse against Child. *See Robisheaux v. State*, 483 S.W.3d 205, 220 (Tex. App.—Austin 2016, pet. ref'd) (determining that State's need for evidence "weighs strongly in favor of admission" because without evidence, State's case would have amounted to the complainant's word against defendant's); *Price v. State*, 594 S.W.3d 674, 681 (Tex. App.—Texarkana 2019, no pet.) (concluding that "[b]ecause there was no biological evidence and there were no third-party eyewitness to the alleged incidents, and because [defendant] challenged [victim's] credibility and memory, the State had a considerable need for the evidence.").

Appellant contends that the inclusion of the evidence regarding his prior conviction for sexual assault of a child negated the State's need to present Sister's testimony to prove his propensity as a sex offender. However, the prior conviction was from nearly twenty years prior to Child's assault but Sister's assaults occurred about six years after Child's, and the State used Sister's testimony to argue that Appellant had sought out a family in need and "groomed" the entire family over years to gain access to Child and then Sister. *Cf. Bradshaw v. State*, 466 S.W.3d 875, 882 (Tex. App.—Texarkana 2015, pet. ref'd) (concluding that trial court did not abuse its discretion when it admitted, over defendant's Rule 403 objections, evidence of three uncharged sexual assaults allegedly committed by defendant against three victims); *Newton v. State*, 301 S.W.3d 315, 317, n.2, 320, n.5 (Tex. App.—Waco 2009, pet. ref'd) (concluding that admission of extraneous offense evidence from non-complainant witness

12

was not cumulative and State needed her testimony to rebut defense claim of fabrication when evidence was about multiple offenses of sexual abuse committed over several years).

Appellant contends that he suffered undue prejudice because Sister's testimony, which included allegations that Appellant penetrated her mouth on two separate occasions, "could be seen as more egregious when compared to the offense at trial."  However, "[a]lthough sexually-related bad acts and misconduct involving children are inherently inflammatory, the plain language of Rule 403 does not allow a trial court to exclude otherwise relevant evidence when that evidence is merely prejudicial."  *Love v. State*, 706 S.W.3d 584, 616 (Tex. App.—Austin 2024, pet. ref'd).

Appellant contends that the jury could have been distracted by Sister's testimony based on the length of time taken to develop her testimony versus that to develop Child's testimony and the placement of her testimony "immediately before Appellant's case-in-chief."  Regarding his contention that the placement within the State's case favors exclusion, Appellant states that "the factual evidence ended with [Sister]."  We understand Appellant to contend that because the only State's witness that testified after Sister was the expert witness, that this focused the jury on the uncharged offense alleged by Sister rather than the charged offense testified about by Child.  First, we note that the order in which the evidence would be presented was not discussed prior to the trial court's ruling.  *See Khoshayand*, 179 S.W.3d at 784.  To the extent it is relevant to our review, we note that the trial court gave an instruction directing the jury that it may consider the evidence regarding Sister's extraneous-offense testimony only if they first found beyond a reasonable doubt that Appellant committed the offenses and that even if they did, that "the defendant is not on trial for any offenses not alleged in the indictment" and that they "must determine if the State proved all elements for the offense alleged in the

13

indictment." *Cf. Beam v. State*, 447 S.W.3d 401, 405 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (noting that "the impermissible inference can be minimized through a limiting instruction"); *Brickley*, 623 S.W.3d at 81–82 (noting the minimizing effect of jury instructions in context of "the potential for the evidence to impress the jury in some irrational way").

Regarding the time taken to develop the testimony, Appellant contends that "it is very likely" that Sister's testimony took longer to develop than Child's because of the two breaks taken during Sister's testimony to allow her to regain composure while testifying. We note that the record does not state how long either break was, but when ordering the breaks the trial court described one as "a short break" and for the other directed the jury to return to the jury room "for just a moment." Further, focusing on the information before the trial court at the time of the ruling, Sister did not need breaks while testifying during the hearing outside the presence of the jury. Focusing on the record, the presentation of evidence during the guilt-innocence portion of the trial covered about 185 pages and took one day. Of the total pages, Sister's testimony covered about thirty-five pages—just under twenty percent. *See Lane v. State*, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996) (concluding this factor weighed in favor of admission where extraneous-offense testimony amounted to "less than one-fifth" of trial testimony); *Love*, 706 S.W.3d at 616 (noting that "[t]he precise ratio is less important than determining whether the jury was distracted from the charged offense").

We cannot conclude that Appellant has shown that the probative value of Sister's extraneous offense testimony "was substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. Thus, under the applicable standard of review, we cannot conclude that the trial court abused its discretion by overruling Appellant's

14

Rule 403 objection. *Alvarez v. State*, 491 S.W.3d 362, 371 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (explaining that "the Rule 403 balancing test normally will not favor the exclusion of evidence of the defendant's prior sexual assaults of children" when the evidence of prior sexual abuse of children is especially probative of defendant's propensity to sexually assault children). We overrule Appellant's first issue.

## JURY CHARGE

In his second issue, Appellant contends that the jury charge included reversible error. The complained of section appears in the charge as follows:[3]

### Definitions

A person acts "**intentionally**," or "**with intent**," with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

A person acts "**knowingly**," or "**with knowledge**," with respect to the nature of his conduct or to the circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

Jury-charge-error claims are reviewed under a two-pronged test in which the appellate court must determine: (1) whether the charge was erroneous, and (2) if there was an error, whether the error was harmful to the defendant. *Olivas v. State*, 202 S.W.3d 137, 143–44 (Tex. Crim. App. 2006); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). The harm-analysis prong depends on whether a complaint regarding that error was

---

[3] The bold formatting is the same as it appears in the charge.

15

preserved in the trial court. *Torres v. State*, 691 S.W.3d 138, 147 (Tex. App.—Austin 2024, pet. ref'd)). If no objection was made, as in this case, a reversal is warranted only if the error resulted in egregious harm. *See Neal v. State*, 256 S.W.3d 264, 278 (Tex. Crim. App. 2008).

Here, Appellant contends that the trial court erred by including the full statutory definitions for the culpable mental states of "intentionally" and "knowingly" in the charge. The statutory mental-state definitions for "intentionally" and "knowingly" each include two conduct elements—nature of the conduct and result of the conduct. Tex. Penal Code § 6.03(a), (b). Appellant contends that the aggravated-assault statute is a nature-of-conduct offense and that the trial court's inclusion of the result-of-conduct instruction was reversible error. *See Price v. State*, 457 S.W.3d 437, 441 (Tex. Crim. App. 2015) ("A trial court errs when it fails to limit the language in regard to the applicable culpable mental states to the appropriate conduct element."). The State replies that the trial court did not err because the proper jury instruction for the conduct element in sexual-assault cases is unsettled law. *See Saldivar v. State*, 783 S.W.2d 265, 267 (Tex. App.—Corpus Christi–Edinburg 1989, no pet.) (explaining that "when an offense is not clearly categorized as either a 'result' or 'nature of the conduct' type offense, it is not error for the trial court to submit the statutory definitions of 'intentionally' and 'knowingly'"). We will assume without deciding that it was error to include the full statutory definitions for the mental states and will conduct a harm analysis.

Appellant did not object to the definitions at trial. Thus, he would not be entitled to reversal unless he was egregiously harmed by those definitions. *See Neal*, 256 S.W.3d at 278. "Jury charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008). "The purpose of the egregious-harm inquiry is to ascertain

16

whether the defendant has incurred actual, not just theoretical, harm," *Swearingen v. State*, 270 S.W.3d 804, 813 (Tex. App.—Austin 2008, pet. ref'd), and "reversal for an unobjected-to erroneous jury instruction is proper only if the error caused actual, egregious harm to" the appellant, *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015). The determination depends "on the unique circumstances of" each case and "is factual in nature." *Saenz v. State*, 479 S.W.3d 939, 947 (Tex. App.—San Antonio 2015, pet. ref'd). Egregious harm is a difficult standard to meet. *Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002). Neither side has the burden of establishing either the presence or a lack of harm. *See Warner v. State*, 245 S.W.3d 458, 464 (Tex. Crim. App. 2008). In this type of analysis, reviewing courts "consider: (1) the jury charge as a whole, (2) the arguments of counsel, (3) the entirety of the evidence, and (4) other relevant factors present in the record." *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013).

### Jury Charge

Appellant contends that "given the streamlined charge and the bold print of the erroneous instruction on the mental states, undue attention is drawn to this error." However, only the words "intentionally," "with intent," "knowingly," and "with knowledge" were in bold and not any of the specific result-of-conduct language. Appellant does not contend that either of these mental states was erroneously included. Further, the application portion of the charge, including its instruction that the offense must have been intentionally or knowingly committed as to the aggravated-sexual-assault count, was correct, and Appellant does not contend otherwise. Thus, this factor does not weigh in favor of concluding he was egregiously harmed. *See Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999) ("Where the application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious.").

*Arguments of Counsel*

Appellant contends that an argument made during the State's closing statements weighs in favor of concluding that he was egregiously harmed. Specifically, he quotes a portion of the State's argument in which it discussed Child's testimony that she could no longer trust people as a result of what Appellant did to her. On appeal, Appellant contends that "this final argument along with the language of the result of the conduct, may lead a jury to focus on the result of the conduct and drawing attention away from the gravamen of the offense: the nature of Appellant's conduct." We are unpersuaded by this argument. The State's trial argument about Child's difficulty trusting people did not emphasize, nor include mention of, Appellant's mental state. There was no emphasis of this assumed error during closing arguments. This factor weighs against concluding that Appellant was egregiously harmed. *See Swearingen*, 270 S.W.3d at 814 (concluding there was no showing of actual harm partly because State's closing arguments did not emphasize or magnify charge error).

*State of the Evidence*

This was not a case where Appellant's intent or knowledge was a contested issue at trial. Appellant did not present any defense of mistake or accident regarding the touching. Rather, the defense was focused on attacking the credibility of the witness and arguing that the allegations were fabricated. This weighs against concluding he was egregiously harmed. *See Reed v. State*, 421 S.W.3d 24, 30 (Tex. App.—Waco 2013, pet. ref'd) (concluding defendant was not egregiously harmed when defensive theory was fabrication by child victim and not whether he lacked requisite culpable mental state to commit offense); *Saldivar*, 783 S.W.2d at 268 ("Where no defense is presented which would directly affect an assessment of mental culpability, there is no harm in submitting erroneous definitions of 'intentionally' and 'knowingly.'"); *Jones*

18

*v. State*, 229 S.W.3d 489, 494 (Tex. App.—Texarkana 2007, no pet.) (concluding that defendant "could not be egregiously harmed by the definition of the intentional and knowing state of mind" when intent was not contested issue even though "it was part of the State's required proof").

### *Other Relevant Factors*

We note that nothing in the record indicates that the jury was confused by the charge. *See Shavers v. State*, 985 S.W.2d 284, 292 (Tex. App.—Beaumont 1999, pet. ref'd) (highlighting that "[t]here is no evidence the jury was confused about the instructions in the charge"); *see also Murrieta v. State*, 578 S.W.3d 552, 556 (Tex. App.—Texarkana 2019, no pet.) (noting that "the jury did not send any notes to the trial court regarding" jury instructions). This factor also weighs against concluding that Appellant was egregiously harmed.

### *Resolution*

We have not identified any showing that Appellant was actually harmed by the inclusion of the full statutory definitions for the mental states. We conclude that he was not egregiously harmed by the assumed error. *See Bradshaw v. State*, 244 S.W.3d 490, 498 (Tex. App.—Texarkana 2007, pet. ref'd) (concluding defendant was not egregiously harmed when "[a]ny harm [was] purely theoretical"). We overrule Appellant's second issue.

### ALLEGED COMMENT ON WEIGHT OF EVIDENCE

In his third issue, Appellant contends that the trial court erred by commenting on the weight of the evidence when the court—allegedly—placed check marks next to each element of the offense on the jury charge. The complained-of page appears as follows in the record:

### Definitions

A person acts "**intentionally**," or "**with intent**," with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

A person acts "**knowingly**," or "**with knowledge**," with respect to the nature of his conduct or to the circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

### Defenses

It is not a defense to prosecution for the offense of AGGRAVATED SEXUAL ASSAULT OF A CHILD that the actor did not know or believe that the victim of the offense was younger than 14 years of age.

### Application of Law to Facts

With regard to the charge alleged in the indictment, you must determine whether the state has proved, beyond a reasonable doubt, each of the elements. The elements are that—

1. The defendant,
2. In Burnet County, Texas,
3. On or about the 1st day of April, 2013,
4. Intentionally or knowingly caused the penetration of the sexual organ of Burnet Co. 20-016 by the defendant's finger; and
5. Burnet Co. 20-016 was at the time a child younger than fourteen years of age.

You must all agree on elements 1 through 5 listed above.

If you all agree the state has failed to prove, beyond a reasonable doubt, one or more ~~both~~ of elements listed above, you must find the defendant "not guilty."

If you all agree the state has proved, beyond a reasonable doubt, ~~both~~ *all* of the ~~two~~ elements listed above, you must find the defendant "guilty." 02-21-2024

~ 5 ~

The State replies that Appellant's issue is based on speculation and not supported by the record. We agree.

20

An appellate court "does not decide cases based on speculation about matters not shown in the record." *Green v. State*, 912 S.W.2d 189, 192 (Tex. Crim. App. 1995). The appealing party has the "obligation to present a record in the court of appeals that demonstrates he is entitled to appellate relief." *Davis v. State*, 345 S.W.3d 71, 78 (Tex. Crim. App. 2011). Here, the record does not establish that the trial court, rather than the jury, added the checkmarks. No objection or other reference to the checkmarks were made on the record. Rather, during closing arguments, the State directly suggested to the jury that they use the elements list on page five of the court's charge as a "check list." Appellant's contention that the checkmarks were made by the trial court are speculative and not shown in the record.

We conclude that Appellant has not established error in this case. *Cf. Chapman v. State*, 859 S.W.2d 509, 514–15 (Tex. App.—Houston [1st Dist.] 1993) (holding that no error was preserved for appellate review of deprivation of fair trial issue when appellant's contention that trial court underlined potions of its charge was speculative, disputed by State, and "made for the first time on appeal"), *rev'd on other grounds*, 921 S.W.2d 694 (Tex. Crim. App. 1996); *see also Smith v. State*, No. 01-22-00471-CR, 2023 WL 4239875, at *8 (Tex. App.—Houston [1st Dist.] June 29, 2023, no pet.) (mem. op., not designated for publication) (holding that appellant did not establish error that was "based entirely on speculation" by appellant that trial court made handwritten markings on jury charge). We overrule Appellant's third issue.

## CONCLUSION

We affirm the trial court's judgment of conviction.

_____

Gisela D. Triana, Justice

21

Before Justices Triana, Theofanis, Crump

Affirmed

Filed:   February 13, 2026

Do Not Publish